UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-22987-BLOOM/Louis

DR. JUAN SARDINAS,

      Plaintiff,

v.

MIAMI VETERINARY SPECIALISTS, P.A.,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss, ECF No. [9] ("Motion"). Plaintiff filed a response in opposition, ECF No. [16] ("Response"), to which Defendant filed a reply, ECF No. [22] ("Reply"). The parties also filed further briefing with leave of Court, including a sur-reply, ECF No. [25] ("Sur-Reply") and a sur-sur-reply, ECF No. [30] ("Sur-Sur-Reply"). The Court has considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

## I.    BACKGROUND

This action arises out of Defendant's alleged failure to comply with the terms of a Stockholders' Agreement, ECF No. [1-3] (the "Agreement"), which governs the relationship between Defendant and its "Stockholders," Plaintiff and Dr. Alvaro Larín ("Dr. Larín"). According to the Complaint, ECF No. [1], Defendant operates a veterinary medical practice that is co-owned by Plaintiff and Dr. Larín, each of whom owns fifty-percent of the company. *Id.* at ¶ 9. Under the Agreement, Defendant shall purchase all of the shares of a Stockholder if the Stockholder's employment with Defendant is terminated "for any reason other than death or disability." *Id.* at

¶ 11 (quoting ECF No. [1-3] at § 4(c)).[1] The purchase price is calculated based on a formula,[2] with the date[3] for calculating the company's value and the corresponding method[4] for valuation dictated by the Agreement. *Id.* at ¶¶ 12-14. In this regard, the Agreement directs that should the selling Stockholder elect that the purchase price be the "Stockholder's proportionate share of the fair

---

[1] The Agreement provides that "[u]pon the occurrence of an event listed herein, the Corporation shall purchase all of the shares of a Stockholder, at the price determined in accordance with Section 5 hereof, payable in accordance with Section 7 hereof: . . . termination of the Stockholder's employment with the Corporation for any reason other than death or disability." ECF No. [1-3] at § 4(c).

[2] The Agreement states that the "purchase price of a Stockholder's stock in the Corporation for purposes of the purchase and sale of said stock . . . shall be equal to the amount set forth in the Certificate of Agreed Value . . . multiplied by a fraction, the numerator of which is the number of shares being sold, and the denominator of which is the number of issued and outstanding shares of the Corporation's stock prior to the sale." ECF No. [1-3] at § 5(a).

[3] The Agreement provides that the "value of a Stockholder's stock shall be determined and the purchase shall be deemed to have occurred as of the following dates . . . depending upon which event has occurred to cause his stock to be purchased: . . . termination of employment for any reason other than death – the last day of the month immediately preceding the date of termination of employment." ECF No. [1-3] at § 6(d).

[4] The Agreement states as follows:

> If, at any time, it becomes necessary to determine the value of the Corporation and the Certificate of Agreed Value is dated less than one (1) year before the date on which the value is to be determined, the agreed value set forth in such Certificate shall be conclusive as to the value and shall be accepted as the value as of the date on which the value is to be determined, and no other determination of value shall be required or made. In the event a Certificate of Agreed Value is dated more than one (1) year prior to the date on which the value is to be determined, at the option of the selling Stockholder . . . the purchase price shall be the Stockholder's proportionate share of the fair market value of the Corporation. In such event, the Transferor Stockholder and the Corporation shall attempt in good faith to agree upon such fair market value. In the event the Transferor Stockholder and the Corporation cannot agree upon the fair market value within thirty (30) days after the date of the event Transferor Stockholder's or the Corporation's exercise of his or its option to purchase or the date of the event creating the purchse obligation, whichever is applicable, the Transferor Stockholder or the Corporation, by written notice to the other, may elect to have the fair market value determined by appraisal.

ECF No. [1-3] at § 5(c).

market value" of Defendant, ECF No. [1-3] at § 5(c), the selling Stockholder and Defendant "shall mutually appoint a certified public accountant or certified business appraiser . . . to perform the appraisal." *Id.* at § 5(d). The Agreement provides a mechanism to conduct an appraisal if an agreement cannot be reached on appointing an appraiser. ECF No. [1] at ¶ 15 (quoting ECF No. [1-3] at § 5(d)). Specifically,

> If the Transferor Stockholder and the Corporation fail to agree on the identity of the appraiser within ten (10) days, each shall appoint an appraiser and the fair market value shall be the average of the two appraisals, unless the two appraisals vary by more than five percent (5%), in which event the appraiser of the Transferor Stockholder and the appraiser of the Corporation shall select a third appraiser within forty (40) days of their appointment. . . . In the event that either party or his appraiser shall fail to timely take any action hereunder, the fair market value shall be established by the non-defaulting party's appraiser.

ECF No. [1-3] at § 5(d).

In the event of a purchase and sale of a Stockholder's shares, "twenty percent (20%) of the purchase price shall be paid by the purchasing party to the selling Stocholder, as a down payment" at the transaction's closing. ECF No. [1] at ¶ 16 (quoting ECF No. [1-3] at § 7(a)). The purchase price's balance is then paid in "equal consecutive monthly installments, with interest at the prime rate published by the Wall Street Journal," and the purchasing party's obligation to the selling Stockholder "shall be evidenced by a non-negotiable promissory note[.]" *Id.* at ¶ 17 (quoting ECF No. [1-3] at §§ 7(a) and (b)).[5]

Plaintiff alleges that he resigned from Defendant on November 21, 2018, which in turn triggered Defendant's obligation under section 4(c) of the Agreement to purchase his stock in the company. *Id.* at ¶ 19 (citing ECF No. [1-4]). On December 13, 2018, Defendant formally notified Plaintiff that it intended to buy-out Plaintiff's stock in accordance with the Agreement, and that

---

[5] Additionally, if "any litigation aris[es] by virtue of this Agreement, the prevailing party shall be entitled to an award of all Court costs, litigation expenses and attorneys' fees at both trial and appellate levels." *Id.* at ¶ 18 (quoting ECF No. [1-3] at § 23).

October 31, 2018 would be the date used for determining the purchase price of Plaintiff's stock.
*Id.* at ¶ 20 (citing ECF No. [1-5]). According to Plaintiff, the parties were unable to agree on a
purchase price or jointly select one appraiser, so they agreed to appoint individual appraisers to
complete an appraisal of Defendant as of October 31, 2018. Plaintiff selected Dr. Richard Goebel
and Defendant selected Thomas Garland. *Id.* at ¶¶ 21-22. Dr. Goebel completed his appraisal on
June 3, 2019. Plaintiff later notified Defendant's counsel requesting proposed dates to mutually
exchange appraisals; however, Defendant "did not proceed with the mutual exchange of appraisal,
despite numerous follow-ups[.]" *Id.* at ¶¶ 23-26 (citing ECF Nos. [1-6] and [1-7]). As of July 20,
2020, Defendant had not bought out Plaintiff's interest in Defendant. *Id.* at ¶ 27. In Plaintiff's
view, due to Defendant's alleged "failure to timely perform its obligations under the Agreement,"
"the fair market value of [Defendant] for purposes of determining the price at which [Defendant]
is required to purchase [Plaintiff's] stock is conclusively established by [Plaintiff's] appraiser, Dr.
Goebel." *Id.* at ¶ 28 (citing ECF No. [1-3] at § 5(d)).

The Complaint asserts four counts: breach of contract (Count I); breach of the implied
covenant of good faith and fair dealing (Count II); declaratory judgment (Count III); and specific
performance (Count IV). Regarding Count I, Plaintiff alleges that Defendant breached sections 5
and 7 of the Agreement. *Id.* at ¶¶ 34-35. Regarding Count II, Plaintiff contends that Defendant
breached the Agreement's implied covenants of good faith and fair dealing by "not exchanging
appraisals with [Plaintiff], delaying the process required for determining the price at which
[Defendant] is required to purchase [Plaintiff's] stock and failing to purchase [Plaintiff's] stock
and pay him what he is owed." *Id.* at ¶ 41. Regarding Count III, Plaintiff seeks a declaration that
Defendant breached the Agreement and that, consequently, the purchase price will be based on Dr.
Goebel's appraisal as of October 31, 2018. *Id.* at ¶ 49 Wherefore clause. Finally, in Count IV, he
seeks a judgment "directing [Defendant] to specifically perform pursuant to the terms of the

4

Agreement by buying [Plaintiff's] stock at a price to be determined based on Dr. Goebel's appraisal of [Defendant] as of October 31, 2018, plus accrued interest on that amount, at the prime rate published by the Wall Street Journal, until paid." *Id.* at ¶ 54 Wherefore clause.

Defendant now moves to dismiss the Complaint in its entirety. ECF No. [9]. It makes five overarching arguments. First, Count I fails to allege a breach of the Agreement's terms because Plaintiff himself has not provided his appraisal to Defendant, and thus, Plaintiff has not satisfied a condition precedent for a breach of contract claim, making Count I premature and depriving the Court of subject matter jurisdiction. *Id.* at 7-10. *See also* ECF No. [22] at 2-5 (arguing that the Agreement does not require Defendant to provide its appraisal before Plaintiff provides his). It adds that the Agreement is silent as to the specific time period for the parties to exchange their appraisals, and that mutual exchange of appraisals is not required. ECF No. [9] at 4-5, 8. Second, and relatedly, Count I cannot be founded upon anticipatory repudiation by silence and/or inaction in the form of Defendant's alleged failure to "follow up" with exchanging appraisals. *Id.* at 10-11. Third, Count II fails because the Complaint does not allege a specific contract provision in the Agreement that Defendant breached, and such a cause of action cannot stand independently. *Id.* at 11-13. *See also* ECF No. [22] at 6-7 (arguing that Plaintiff is not a "non-defaulting party" under section 5(d) of the Agreement). Fourth, Count III fails because declaratory relief is inappropriate where the issue is whether a contract has been breached, and Plaintiff seeks an advisory opinion that the Defendant breached the Agreement. ECF No. [9] at 13-17. And fifth, Count IV fails because the Complaint does not allege that Plaintiff has no adequate legal remedy, and because Plaintiff purportedly has not performed under the Agreement, he is not entitled to equitable relief. *Id.* at 17-18. *See also* ECF No. [22] at 9-10 (arguing that Count IV is untimely).

Plaintiff responds that that the premise of Defendant's argument that it did not breach the Agreement because there is no express deadline to exchange Defendant's appraisal is flawed

because Defendant failed to perform altogether, not simply failed to timely perform, and that both parties have proceeded on the basis of mutual exchanges of appraisals since June 2019. ECF No. [16] at 2. Plaintiff raises four main arguments. First, Count I adequately sets forth a claim for breach of contract in which Defendant's breach is its alleged failure to obtain the required appraisal and to purchase Plaintiff's stock pursuant to sections 5 and 7 of the Agreement, rather than a failure to "follow up" or repudiation by silence and/or inaction. *Id.* at 6-7. Relatedly, the Complaint alleges that all conditions precedent are satisfied and that the Court has subject matter jurisdiction. *Id.* at 7-10. Second, as to Count II, the Complaint adequately states that Defendant breached the implied covenant of good faith and fair dealing by failing to perform its obligations under sections 4 through 7 of the Agreement, rather than by failing to "follow up." *Id.* at 10-12. Third, Count III can proceed even though Plaintiff also seeks a breach of contract claim, and Count III "does not seek a determination that [Defendant] breached the Agreement." *Id.* at 12-15. Fourth, Count IV is adequately stated, and specific performance is an available remedy for breach of a stock purchase agreement. *Id.* at 15-17.

In the Sur-Reply, ECF No. [25], Plaintiff represents that it provided Dr. Goebel's appraisal to Defendant on October 20, 2020, mooting many of Defendant's arguments. In the Sur-Sur-Reply, ECF No. [30], Defendant contends that Plaintiff's exchange of the appraisal report is belated, Defendant provided its appraisal to Plaintiff on November 3, 2020, the Court lacks subject matter jurisdiction because Plaintiff had not perfected his claims at the time suit was filed, and Plaintiff cannot amend a pleading through a sur-reply.

The Motion, accordingly, is ripe for consideration.

## II.   LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

It is through these lenses that the Court considers the Motion and the parties' arguments.

## III.     DISCUSSION

Determining whether Defendant is entitled to dismissal of the Complaint raises three overarching issues. The first is whether the Court can consider Exhibit A to the Sur-Reply, ECF No. [25-1], which reflects that Plaintiff provided Dr. Goebel's appraisal to Defendant. The second issue, which is interrelated, is whether the Court has subject matter jurisdiction over this action. And third, whether the Complaint alleges plausible claims upon which relief can be granted. The Court will address each issue in turn.

### A.     The Court may consider the Sur-Reply and its exhibit

In the Sur-Sur-Reply, Defendant alleges that Plaintiff improperly attempts to amend the Complaint by filing the Sur-Reply and that "as a matter of law," the Court cannot consider Exhibit A to the Sur-Reply, which reflects that on October 20, 2020, Plaintiff transmitted Dr. Goebel's appraisal to Defendant. *See* ECF No. [30] at 3-4. The Court is unconvinced.

First, the Court granted Plaintiff leave to file the Sur-Reply, which filing was included with the exhibit at issue in his motion for leave. *See* ECF Nos. [23] and [24]. Second, contrary to

Defendant's argument, the Court is permitted at this stage to consider extrinsic materials where they are central to the plaintiff's claims and are undisputed. *See Maxcess, Inc.*, 433 F.3d at 1340 ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley*, 304 F.3d at 1135 ("[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. 'Undisputed' in this context means that the authenticity of the document is not challenged.") (internal citation omitted)). Defendant does not dispute the authenticity of Exhibit A and, according to Defendant's briefings, whether Plaintiff exchanged its appraisal report is central to the viability of Plaintiff's lawsuit. Third, Defendant maintains the Court cannot consider that Plaintiff submitted its appraisal but nonetheless expressly invites the Court to also "be aware that on November 3, 2020 . . . Defendant provided its appraisal as provided in the Contract. As such, it cannot be said the Contract is in breach[.]" ECF No. [30 at 3 n.1. Accordingly, the Court rejects Defendant's argument and will consider the exhibit at this juncture.

### B.   The Court does not lack subject matter jurisdiction

The gravamen of Defendant's argument regarding subject matter jurisdiction is that Plaintiff filed suit before having satisfied all conditions precedent, and thus, his claims are unripe and the Court lacks jurisdiction over this action. *See* ECF Nos. [9] at 7-10; [22] at 2-5; [30] at 2-3. Upon review, the Court concludes that it does not lack subject matter jurisdiction over this lawsuit.

First, as reflected in the Sur-Reply, ECF No. [25], Plaintiff transmitted Dr. Goebel's appraisal to Defendant on October 20, 2020. As such, whether a condition precedent has been satisfied is conceptually moot. Second, even if Plaintiff had not exchanged the appraisal and the Court were to focus solely on the allegations at the time of filing suit, which the Court must do,

ECF No. [30] at 2-3, the Complaint would still not be dismissed for lack of subject matter jurisdiction.

Both parties agree that whether conditions precedent have been satisfied is "generally not adjudicated on a motion to dismiss." *See* ECF Nos. [9] at 9 and [16] at 7. This is so because whether a party actually "fulfilled any necessary conditions precedent to filing suit is a question not suitable for disposition upon a motion to dismiss." *Tikiz Franchising, LLC v. Piddington*, No. 17-CV-60552, 2017 WL 8780760, at *2 (S.D. Fla. May 8, 2017) (citing *Int'l Village Ass'n, Inc. v. AmTrust N. Am., Inc.*, No. 15-80260-CIV, 2015 WL 3772443, at *4 (S.D. Fla. June 17, 2015) ("[Defendant's] contrary assertion that Plaintiffs did not satisfy conditions precedent . . . raises an issue of fact inappropriate for resolution on a motion to dismiss.")). Further, for pleading purposes, to withstand a motion to dismiss, "generally alleg[ing] that conditions precedent have been satisfied" is "sufficient." *Tikiz Franchising, LLC*, 2017 WL 8780760, at *2 (citing Fed. R. Civ. P. 9(c)); *Vargas v. Fla. Crystals Corp.*, No. 16-81399-CIV, 2017 WL 11536186, at *5 (S.D. Fla. May 30, 2017) (explaining that there is "no basis to find, at the pleading stage" that claims were premature where complaint alleged that all conditions precedent have been fulfilled).

Here, the Complaint expressly alleges that "[a]ll conditions precedent or other requirements for bringing this action occurred, were performed or were waived." ECF No. [1] at ¶ 31. This allegation is sufficient for pleading purposes. *See, e.g.*, *Krauser v. Biohorizons, Inc.*, No. 10-80454-CIV, 2010 WL 3468481, at *3 (S.D. Fla. Sept. 1, 2010) (concluding that allegation that "all conditions precedent to the institution of this action have occurred, been met or otherwise waived" was sufficient to plead compliance with a condition precedent under the contract) (collecting cases). While Defendant challenges that the Complaint's other allegations conflict with this representation, the Court need not resolve at this juncture whether Plaintiff truly satisfied all conditions precedent before he filed suit. Such inquiry would necessitate a factual inquiry

inappropriate at this time (and would require examining whether any preconditions or terms were waived), and Plaintiff's allegations are, in any event, taken as true and construed favorably to him.

For instance, although it is undisputed that Plaintiff did not provide his report until October 2020, whether Plaintiff was required to do so until Defendant provided its report is disputed, especially given Plaintiff's allegations that it sought to produce the reports by mutual exchange yet Defendant would not produce its report despite numerous email communications. ECF No. [1] at ¶¶ 21-26. Against this backdrop, while Defendant emphasizes that the Agreement does not set forth a specific deadline compelling it to act, the Agreement directs that "[i]n the event that either party or his appraiser shall fail to timely take any action hereunder, the fair market value shall be established by the non-defaulting party's appraiser." ECF No. [1-3] at § 5(d). Plaintiff's report was completed in June 2019. Thus, the Court cannot conclude that conditions precedent were not waived or that Plaintiff otherwise did not satisfy conditions precedent before initiating this lawsuit.

The Complaint, moreover, adequately pleads that the Court has subject matter jurisdiction based on diversity of citizenship and that venue is proper in this district. ECF No. [1] at ¶¶ 4-8. Defendant does not challenge the Court's subject matter jurisdiction on these grounds. Accordingly, dismissal for allegedly failing to satisfy conditions precedent, resulting in the Court lacking subject matter jurisdiction, is inappropriate, and the Motion is denied on this point.

## C.    Count I is adequately stated

Count I alleges a breach of contract claim. *Id.* at ¶¶ 32-37. Defendant moves to dismiss this Count because the Complaint does not allege that Defendant committed a breach. Specifically, according to Defendant, the Agreement neither requires mutual exchange of appraisals, Defendant to provide its appraisal before Plaintiff provides his, nor Defendant to exchange its appraisal by a specific deadline. ECF Nos. [ 9] at 7-10; [22] at 2-5. Defendant contends further that Plaintiff breached the Agreement by failing to turn over its appraisal to Defendant before February 19,

2019, ninety days after the November 21, 2018 termination, ECF No. [22] at 3-4, and it even suggests that its obligation to buy-out Plaintiff's interest "is subject to waiver by the delayed actions of the Plaintiff[.]" ECF No. [9] at 9. Upon review, the Court finds that Plaintiff adequately alleges a claim for breach of contract in Count I.

Under Florida law, an "adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008); *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094-95 (Fla. 3d DCA 2014). Each of these elements is reflected in the Complaint's allegations. *See* ECF No. [1] at ¶¶ 33-36. Further, even though Defendant has now provided its appraisal to Plaintiff, ECF No. [30] at 3 n.1, that does not mean that a breach did not occur or that Defendant has cured potential breaches. Indeed, the Complaint alleges that Defendant failed to perform its obligations pursuant to sections 5 and 7 of the Agreement, which relate to determining Defendant's fair market value and Defendant then purchasing Plaintiff's interest in the company. No such purchase and sale has occurred, all purportedly due to Defendant's inactions. *See* ECF No. [1] at ¶¶ 25-29. Moreover, even if the Agreement does not provide an express deadline to provide appraisals, as Defendant concedes, contractual obligations are not to be held in perpetuity. ECF No. [9] at 11. And, in any event, the Agreement states that as to the parties' obligations for obtaining and exchanging appraisals, the parties are to take actions in a "timely" manner. *See* ECF No. [1-3] at § 5(d). Based upon the Complaint's allegations, that did not occur.

Accordingly, the Court rejects Defendant's argument that without a specific deadline, "a breach of contract claim simply cannot be stated." ECF No. [9] at 2. The Motion to dismiss as to Count I is denied.

### D.      Count II is adequately stated

In Count II, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing. According to Defendant, "[t]he facts, as pled, and the basis upon which the Plaintiff seeks relief under this cause of action, is inconsistent with Florida law." ECF No. [9] at 12. In particular, Defendant maintains that the Complaint does not allege a breach of an express contract term, thus causing the claim to fail. *Id.* at 11-13; ECF No. [22] at 6-7. In essence, Defendant argues that because Count I allegedly fails to state a claim, Count II cannot survive independently. Upon review, the Court is unpersuaded.

Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1438 (S.D. Fla. 1996)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Karp v. Bank of Am., N.A.*, 2013 WL 1121256, at *3 (M.D. Fla. Mar. 18, 2013); *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1225 (S.D. Fla. 2013). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion*, 420 F.3d at 1151. The implied duty of good faith must therefore "relate to the performance of an express term of the contract . . . [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) (quoting *Hospital Corp. of America v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v.*

13

*John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)). Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am. v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998). As such, "there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement." *QBE*, 94 So. 3d at 548 (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232, 1234 (Fla. 4th DCA 2001)).

Tthe Court agrees with Plaintiff that it has adequately stated a claim for breach of the implied covenant of good faith and fair dealing. As an initial matter, the premise of Defendant's argument is without merit because the Court has not dismissed Plaintiff's breach of contract claim. Thus, contrary to Defendant's point, the basis for this claim is not inconsistent with Florida law. Regardless, the Complaint alleges that Defendant breached the implied covenant as it relates to sections 4 through 7 of the Agreement by "among other things, not exchanging appraisals with [Plaintiff], delaying the process required for determining the price at which [Defendant] is required to purchase [Plaintiff's] stock and failing to purchase [Plaintiff's] stock and pay him what he is owed, as contemplated by the Agreement." ECF No. [1] at ¶¶ 39-42. Indeed, although these contractual obligations were triggered by Plaintiff's termination on November 21, 2018 (and the Agreement contemplates a closing within ninety-days of termination), as of June 2019 Plaintiff requested Defendant to exchange appraisals so they could proceed to close, *id.* at ¶¶ 19-29, yet Defendant allegedly would not act, in turn precluding Plaintiff's buy-out. This is so even though the Agreement requires actions related to appraisals to be made "timely." ECF No. [1-3] at § 5(d). As Plaintiff argues, such alleged delay contravenes reasonable expecations. ECF No. [16] at 12 (citing *Martorella*, 931 F. Supp. 2d at 1226 ("[U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party

of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting. Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.") (citation omitted)).

Simply put, as set forth in the Complaint, over two years have passed since Plaintiff's employment terminated with Defendant, but Plaintiff has been unable to sell his stock back to Defendant due to Defendant's alleged inaction. Taken as a whole, the Complaint states a plausible claim in Count II. The Motion is denied as to this count.

### E.     Count III is duplicative of Count I

In Count III, Plaintiff seeks declaratory relief because, in his view, Defendant breached the Agreement "by repeatedly failing to comply with its obligations in connection with the purchase of [Plaintiff's] stock," there is a "justiciable controversy relating to the legal rights and/or responsibilities at issue under the Agreement," and a declaratory judgment should issued that Defendant "breached the Agreement and as a result thereof, the purchase price of [Plaintiff's] stock will be based on Dr. Goebel's appraisal of [Defendant] as of October 31, 2018." ECF No. [1] at ¶¶ 44-49. According to Defendant, this claim fails because it effectively seeks an advisory opinion that Defendant breached the Agreement. *See* ECF No. [9] at 3, 13-17. Plaintiff responds that a declaratory judgment claim can proceed with a claim for breach of contract, and he does not seek a declaration that Defendant breached the Agreement but rather "a determination as to the relief to which [Plaintiff] is entitled as a result of [Defendant] not providing its appraisal and purchasing [Plaintiff's] stock." ECF No. [16] at 5, 12-15.

"Declaratory judgment claims may properly coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim. Such claims for declaratory judgment must be forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." *Garcia v. Scottsdale Ins. Co.*, No. 18-20509-CIV, 2018 WL 3432702, at *2 (S.D. Fla. July 16, 2018) (internal citation omitted). Declaratory judgment claims that functionally seek adjudication on the merits of a breach of contract claim are duplicative and cannot stand. *See Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*, No. 11-21163-CIV, 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-25313-CIV, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017); *ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, No. 18-60562-CIV, 2018 WL 3672265, at *3-4 (S.D. Fla. July 24, 2018), *report and recommendation adopted*, No. 18-CV-60562, 2018 WL 4409851 (S.D. Fla. Aug. 16, 2018).

Contrary to Plaintiff's representation that he does not seek a determination that Defendant breached the Agreement, the Complaint expressly alleges that the Court issue a declaratory judgment that Defendant breached section 5(d) of the Agreement, and that consequently, Dr. Goebel's appraisal will be used as the purchase price for Plaintiff's stock. ECF No. [1] at ¶ 49 Wherefore clause. Not only is declaratory relief unavailable where the issue for the Court's determination is whether an unambiguous contract has been breached, *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1318 (S.D. Fla. 2011), the relief requested in Count III is already entirely subsumed within Count I. *See* ECF No. [1] at ¶¶ 28, 34, 37 Wherefore clause (alleging that Defendant breached section 5(d) of the Agreement such that Defendant's fair market value "is conclusively established by [Defendant's]

appraiser, Dr. Goebel" and seeking a "final judgment against [Defendant] in an amount based on Dr. Goebel's appraisal of [Defendant] as of October 31, 2018").

"[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *Fernando Grinberg Tr. Success Int. Properties LLC v. Scottsdale Ins. Co.*, No. 10-20448-CIV, 2010 WL 2510662, at *2 (S.D. Fla. June 21, 2010) (dismissing declaratory relief count with prejudice because the "claim for declaratory judgment is subsumed within [Plaintiff's] claim for breach of contract"); *Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, No. 19-CV-21289, 2019 WL 4863378, at *3 (S.D. Fla. Oct. 2, 2019) (same).[6] Indeed, a "petition for a declaration that one party's reading of a contract establishes breach is nothing more than a petition claiming breach of contract." *Raffell v. Scottsdale Ins. Co.*, No. 20-21719-CIV, 2020 WL 6385503, at *3 (S.D. Fla. June 16, 2020) (quoting *AquaDry Plus Corp. v. Rockhill Ins. Co.*, No. 19-62331-Civ, 2020 WL 927440, at *2 (S.D. Fla. Feb. 26, 2020)); *Ministerio Evangelistico Int'l*, 2017 WL 1363344, at *2 ("A petition seeking a declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract.") (citation omitted).

---

[6] Although this Court previously did not dismiss a declaratory judgment claim where the defendant argued that a breach of contract claim was a "better or more effective" remedy, *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, No. 16-CV-62610, 2017 WL 850177, at *3 (S.D. Fla. Mar. 3, 2017), that case is distinguishable. Unlike here, that lawsuit involved a purported class action, no monetary relief was sought in the complaint nor was there a breach of contract claim raised alternatively, the complaint asserted a single count for declaratory relief, and the Court was requested to interpret the insurance policy at issue in light of a Florida statute to determine whether the insurer must pay either 100% of all billed charges submitted that are below the fee schedule amount or 80% of the billed amount that are submitted. *Id.* at *1-3.

While some courts within this district have dismissed these claims with prejudice, others have dismissed without prejudice "with leave to amend should [Plaintiff] believe he can adequately state a claim for declaratory judgment which is not duplicative of his breach-of-contract claim." *See, e.g.*, *Garcia*, 2018 WL 3432702, at \*3; *Raffell*, 2020 WL 6385503, at \*4. The Court chooses the latter approach, especially given Plaintiff's request in his Respose that he be granted leave should any of his claims be deficient. ECF No. [16] at 17. Accordingly, Count III is dismissed without prejudice with leave to amend.

### F.    Count IV fails to state a claim upon which relief can be granted

In Count IV, Plaintiff asserts a claim for specific performance in which it seeks that Defendant be "direct[ed] . . . to specifically perform pursuant to the terms of the Agreement by buying [Plaintiff's] stock at a price to be determined based on Dr. Goebel's appraisal of [Defendant] as of October 31, 2018, plus accrued interest on that amount, at the prime rate published by the Wall Street Journal, until paid." ECF No. [1] at ¶ 54 Wherefore clause. Defendant contends that this claim fails because the Complaint does not allege that Plaintiff is without adequate legal remedies and Plaintiff, in any event, is not entitled to equitable relief given that he supposedly failed to perform under the Agreement and has "unclean hands." ECF Nos. [9] at 17-18; [22] at 9-10.[7] Upon review, the Court need not address whether this claim is potentially barred

---

[7] In the Reply, Defendant argues for the first time (in a three sentence footnote) that Count IV is time-barred because that claim should have been brought within one year of June 24, 2019. ECF No. [22] at 9 n.2. It is improper to raise an argument for the first time in a reply. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at \*3 (S.D. Fla. Oct. 07, 2011) (collecting cases and noting that "[j]udges in this district . . . have repeatedly rejected attempts by parties to raise new arguments in reply memoranda"). Further, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Melford v. Kahane and Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019). Because this argument is raised for the first time in the Reply and is undeveloped, it is waived and not considered by the Court. In any event, the Court

by Plaintiff's supposed unclean hands[8] and failure to perform, the resolution of which is inappropriate at this stage, because the Court agrees that the Complaint fails to demonstrate the absence of an adequate legal remedy.

"Specific performance is an equitable remedy as opposed to a legal cause of action. To demonstrate a right to this remedy under Florida law, a plaintiff must plead facts showing: (1) the plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law; and (3) justice must require it." *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332, 1334 (S.D. Fla. 2010) (citation omitted). In addition to pleading facts supporting the second element of no adequate remedy at law, the first element of the claim requires litigants seeking the remedy to establish the legal requirements of entitlement to the right "by clear, definite and certain proof." *Id.*; *see also Kruse v. Massachusetts Mut. Life Ins. Co.*, No. 17-CV-61115, 2017 WL 3494334, at *7–8 (S.D. Fla. Aug. 15, 2017) ("In order for a court of equity to decree specific performance of a contract, the terms of the agreement must be clear, definite, certain and complete, for the equitable remedy of specific performance is granted only where the parties have actually entered into an agreement that is definite and certain in all of its essential elements. . . . [T]he plaintiff must do more than merely prove his case by a preponderance of the

---

need not decide if June 24, 2019 is the very last date of a possible breach given that the Complaint alleges that after this date, Defendant would not proceed with exchanging appraisals despite subsequent email discussions. *See* ECF No. [1] at ¶¶ 24-27; ECF Nos. [1-6]; [1-7].

[8] "Application of the equitable doctrine of unclean hands lies within the sound discretion of the district court." *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1355 (11th Cir. 1983). Notably, this Court has previously declined to dismiss claims on the basis that a "Plaintiff has come to this Court with unclean hands" because "the doctrine of unclean hands is an affirmative defense that Defendant may raise in its answer which requires resolution of factual issues not ripe for discussion at the dismissal stage." *Abramson v. 1 Glob. Capital, LLC*, No. 15-CV-61373, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (citing *Pronman v. Styles*, No. 12-80674-CIV, 2013 WL 3894978, at *5 (S.D. Fla. July 26, 2013) ("[Unclean hands and laches] are [ ] equitable remedies that are fact intensive, thereby making them an unsuitable basis for dismissal at the pleading stage.").

evidence, . . . he must prove the contract as alleged in his complaint by competent and satisfactory proof which must be clear, definite, and certain.") (citations omitted).

Further, as this Court previously recognized, "it is not to be overlooked that a claim for specific performance is subject to dismissal because 'specific performance is a remedy, not a freestanding legal claim.'" *Kruse*, 2017 WL 3494334, at *8 (citation omitted). In this respect, Count IV "cannot stand alone as its own claim." *Id.*; *see also Glob. Digital Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, No. 18-80106-CIV, 2019 WL 8323955, at *2 (S.D. Fla. Nov. 27, 2019) (explaining that even though plaintiff brought a count for breach of contract and a count for specific performance, plaintiff "in essence, brings only one cause of action" for breach of contract because specific performance "is a remedy for breach, not a stand-alone cause of action"). Regardless, specific performance is available only when there is no adequate remedy at law, yet the same relief sought in Count IV—money damages based on Defendant purchasing Plaintiff's stock at a price determined by Dr. Goebel's appraisal—is also pled in Counts I and II. *Compare* ECF No. [1] at ¶¶ 37 and 43 Wherefore clauses *with* ¶ 54 Wherefore clause. "[S]pecific performance of a contract concerning stock usually will not be decreed unless damages at law are clearly incomplete and inadequate." *Baruch v. W.B. Haggerty, Inc.*, 188 So. 797, 798-99 (Fla. 1939).

"Specific performance is, by its nature, only an alternative to money damages in enforcing the terms of a contract." *Kruse*, 2017 WL 3494334, at *8 (citation omitted). Count IV, therefore, is duplicative of the legal remedy claims available to Plaintiff and thus subject to dismissal. *See id.* (dismissing claim for specific performance with prejudice and explaining that specific performance claim was "redundant" and "duplicative" with claim for breach of third-party beneficiary contract because "payment of the Policy's death benefit is the very same remedy Plaintiff seeks" in the breach of contract claim). The Motion, accordingly, is granted on this point.

20

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [9]**, is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Count III is **DISMISSED** *without prejudice* and Count IV is **DISMISSED** *with prejudice*.

2. Plaintiff is granted leave to amend and shall file an Amended Complaint on or before **December 18, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 8, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record